UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TONY WISE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:04-cv-0901-DFH-TAB |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Tony Wise seeks judicial review of a final decision by the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income.   Acting for the Commissioner, Administrative Law Judge Peter Americanos determined that Mr. Wise was not disabled under the Social Security Act because none of his severe impairments met or medically equaled any impairment listed in Subpart P, Appendix 1 of the regulations, and because he retained the residual functional capacity to perform a limited range of sedentary work.   As explained below, the ALJ's decision regarding Mr. Wise's residual functional capacity to perform work available in the national economy is not supported by substantial evidence.  The ALJ failed to address evidence of Mr. Wise's problems with fine motor skills.  Those problems may be critical to his actual ability to perform the sedentary, unskilled jobs with

sit/stand options that the ALJ gave as the reason for denying benefits.  The ALJ also failed to justify the discrepancy between the hypothetical question posed to the vocational expert and the testimony of the medical expert and the ALJ's own findings on residual functional capacity.  The ALJ's decision is therefore reversed and remanded for reconsideration consistent with this entry.

*Background*

Plaintiff Tony Wise was born January 5, 1958.  He was 41 years old on the alleged disability onset date of September 7, 1999, and 44 years old when the ALJ denied his application for Social Security benefits in July 2002.  He completed the tenth grade.  R. 85.  From about 1978 to 1997, Mr. Wise worked as a musician in a local band.  He worked in a machine shop operating a grinding tool from April 1998 until September 1999.  R. 80, 306-07.  Mr. Wise testified that his physical problems included degenerative disc disease, arthritis, knee problems, and hypertension.[1]

---

[1]The ALJ found that Mr. Wise's hypertension was controlled with medication and produced no limitations.  Mr. Wise does not dispute that finding.  R. 311. Also, Mr. Wise had hernia repair surgery in 1999.  Although he suffered groin pain afterward, he does not claim that this pain rose to the level of a severe impairment.  See R. 105-06, 119-20.

1.    *Back and Neck Problems*

Mr. Wise testified that he suffered from constant low back pain that affected him "fully day and night," with no relief from medication.   R. 309. Although his doctors had not discussed surgery for his back pain, he underwent physical therapy and other treatments.  R. 309, 317-18.  Chetan Shukla, M.D., concluded from a September 18, 2001 MRI that he had "degenerative disc disease at L4-5 with a diffusely bulging annulus."  R. 248.  Dr. Shukla administered a lumbar epidural steroid injection on October 24, 2001 in an attempt to relieve the low back pain.  R. 247.  Before the treatment, Dr. Shukla examined Mr. Wise and opined that he suffered from axial low back pain caused possibly by degenerative joint disease or lumbar facet disease or spinal stenosis.  R. 247.  Mr. Wise testified that the injection did not relieve his pain.  R. 318.  On February 13, 2002, Dr. Shukla administered a lumbar facet injection in a further attempt to relieve Mr. Wise's low back pain.  R. 292.

Mr. Wise also complained of neck pain and right arm pain.  R. 114, 283. An MRI of the cervical spine dated December 21, 1999 revealed a left paracentral moderate sized C3-4 disc extrusion, small to moderate sized left C5-6 hard disc, C6-7 spondylosis, and a narrow spinal canal from C3-4 through C7.  R. 114.[2]  Dr. Shukla administered facet injections in Mr. Wise's cervical spine on May 19, 2000 and June 21, 2000 in an attempt to lessen his pain.  R. 110-12.  Dr. Shukla

_____

[2]Spondylosis is the stiffening of the vertebrae.  *Stedman's Medical Dictionary* 1656 (26th ed. 1995).

treated Mr. Wise with radiofrequency neuro-ablation on July 7, 2000 for possible longer term pain relief.  R. 108-09.

Mr. Wise testified that he experienced spasms in his right (dominant) hand, arm, and shoulder 90 percent of the time and was sometimes unable to write his name.  R. 310, 316-17.  He testified that he had stiffness and swelling in his hands and fingers that sometimes created difficulty in buttoning shirts and picking up coins from a table.  R. 313, 318.  Angel Ablog, M.D., a consulting examiner, noted on October 3, 2000 that Mr. Wise had "a problem picking up coins, buttoning shirts, writing with a pencil, and dialing the phone." R. 131.  The Social Security Administration, in its June 8, 2001 reconsideration of Mr. Wise's claim, stated that he "should avoid repetitive fine motor movements."  R. 34.  Mr. Wise testified that he took Vioxx for his arthritis, Vicodin for pain, and Valium for muscle spasms.  R. 309, 312, 318.

### 2.    *Knee Problems*

Mr. Wise has had four surgeries on his right knee and two on his left since 1992.  R. 125, 239, 293-94, 309.  Before his right knee operation of January 21, 1998, he was diagnosed with right knee degenerative joint disease with degenerative changes of the patellofemoral joint.  R. 125.  A report on November 5, 1998 stated that Mr. Wise had moderately severe degenerative arthritis in his

knees.  R. 239-40.  Before his left knee operation of March 8, 2002, he was diagnosed with left knee patellofemoral chondral degeneration.  R. 293.[3]

3.    *Treating Physician's Opinion*

Mr. Wise's treating physician, Brian Darrisaw, M.D., reported on October 22, 2001:  "Mr. Tony Wise has severe arthritis involving both knees, cervical and lumbar spine which precludes him from working.  He should be deemed permanently disabled."  R. 298.  Dr. Darrisaw also completed a physical residual functional capacity assessment on November 30, 2001, indicating that Mr. Wise was totally restricted as to any repetitive hand activity, any repetitive foot activity, any sitting, any standing, any walking, any lifting, and any bending, twisting, kneeling, stooping, and crawling.  R. 203-12.  Dr. Darrisaw concluded in his assessment that Mr. Wise was unable to do any work at all.  R. 210.

4.    *Consulting Examiner*

Dr. Ablog examined Mr. Wise on October 3, 2000.  The doctor stated, in relevant part:

EXTREMITIES:  The extremities are symmetrical.  There is a problem picking up coins, buttoning shirts, writing with a pencil, and dialing the phone.  The pulses and reflexes are normal.  There is a problem

---

[3]These diagnoses were reiterated in various examination reports.  See R. 230 (Jan. 15, 1998); R. 233 (Jan. 27, 1998); R. 232 (Feb. 3, 1998); R. 231 (Feb. 17, 1998); R. 229 (Nov. 9, 1998); R. 188, 238 (Nov. 7, 2000); R. 187 (Feb. 15, 2001).

squatting and walking forwards and backwards while squatting, but there are no problems walking on heels, toes and tandem. There are no varicosities and ulcerations. Skin is moist and warm. There is no intermittent claudiction. There is no inflammation, deformities, stiffness and abnormal motion. There is no problem with stairs. There is no leg edema. There is no limp or cane. There is no problem with going up and down the examination table. He states that he has swelling at the PIP. He states that he can walk 1 block.

NEUROLOGICAL: The hand grips are 4/5. He states that he drops things like utensils. The strength of both legs are 5/5. The mental status, position and vibration sense, deep tendon reflexes are normal, and Romberg's sign are normal. There is 10% scoliosis. Pin prick is less on hands.

R. 131. Dr. Ablog also examined Mr. Wise for range of motion, and noted decreased range of motion, with pain, of the cervical and lumbar regions of the spine. R. 133. Dr. Ablog also noted Mr. Wise's knee and hip ranges of motion were decreased and accompanied by pain. *Id.*[4]

5.    *Procedural History*

Mr. Wise applied for disability insurance benefits and supplemental security income on August 21, 2000. His claim was denied initially and on reconsideration. He filed a timely request for a hearing before an ALJ. Mr. Wise appeared and testified at a hearing held on July 2, 2002 before ALJ Peter Americanos. Ray Burger testified as a vocational expert and Richard Hutson,

---

[4]The ALJ considered and discounted the opinions of the non-examining State Agency medical consultants because they "did not have the benefit of the most recent medical source statements, current medical records, or the hearing testimony." R. 20.

M.D., testified as a medical expert.[5]  The ALJ issued a decision on July 23, 2002 finding Mr. Wise not disabled.  The Appeals Council denied review on March 26, 2004.  The ALJ's decision is treated as the final decision of the Commissioner. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

*The Statutory Framework for Determining Disability*

To be eligible for the disability insurance benefits and supplemental security income he seeks, Mr. Wise must establish that he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that had lasted or could be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d), 1382c(a)(3).  This showing would be presumed if Mr. Wise's impairments met or medically equaled any impairment listed in Part 404, Subpart P, Appendix 1 of the implementing regulations, and if the duration requirement were met.  20 C.F.R. § 404.1520(d).  Otherwise, Mr. Wise can establish disability only if his impairments were so severe that he was unable to perform not only the work he had previously done, but also any other kind of substantial work existing in the national economy.  20 C.F.R. § 404.1520(f) and (g).

---

[5]In his decision, the ALJ incorrectly referred to Dr. Hutson as Dr. Arthur Lorber, another doctor who often evaluates Social Security claimants.

This eligibility standard is stringent.  The Act does not contemplate degrees of disability or allow for an award based on partial disability.  *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  The Act provides important assistance for some of the most disadvantaged members of American society.  But before tax dollars – including tax dollars paid by others who work despite serious and painful impairments – are available as disability benefits, it must be clear that a claimant has an impairment severe enough to prevent him from performing virtually any kind of work.  Under the statutory standard, these benefits are available only as a matter of nearly last resort.

The implementing regulations for the Act provide the familiar five-step process to evaluate disability.  See 20 C.F.R. § 404.1520(a)(4).  The steps are as follows:

(1)    Is the claimant engaged in substantial gainful activity?  If so, he is not disabled.

(2)    If not, does the claimant have a severe impairment or combination of impairments?  If not, he is not disabled.

(3)    If so, does the impairment meet or equal an impairment listed in the regulations?  If so, the claimant is disabled.

(4)    If not, can the claimant do his past relevant work?  If so, he is not disabled.

(5)    If not, can the claimant perform other work in the national economy given his residual functional capacity, age, education, and experience?  If not, he is disabled.

When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

The ALJ found that Mr. Wise satisfied step one because he had not engaged in any substantial gainful activity since the alleged onset of disability. The ALJ found that Mr. Wise's degenerative disc disease, knee problems, and hypertension produced limitations that met the definition of "severe." This finding was sufficient to satisfy step two. At step three, the ALJ found that Mr. Wise's impairments did not meet or equal any of the listed impairments in Subpart P, Appendix 1 of the regulations, particularly Listing 1.04 for spinal problems. At step four, the ALJ found that Mr. Wise was unable to perform any of his past relevant work. At step five, the ALJ found that Mr. Wise retained the residual functional capacity to perform sedentary work with additional limitations, and that there were a significant number of jobs in the national economy that he could perform. R. 20-21.

*Standard of Review*

If the Commissioner's decision is supported by substantial evidence, it must be upheld by a reviewing court.  42 U.S.C. § 405(g); *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses.  *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna*, 22 F.3d at 689.  The court must examine the evidence that favors the claimant as well as the evidence that supports the Commissioner's conclusion.  *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or if the ALJ based the decision on serious factual mistakes or omissions.  *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

*Discussion*

Mr. Wise advances five arguments for remand:  (1) the ALJ erred in ignoring evidence of his problems with fine manipulation; (2) the ALJ erred by asking the vocational expert a hypothetical question that assumed less stringent limitations than the medical expert had suggested; (3) the ALJ erred in failing to adequately articulate why Mr. Wise's impairments did not meet or equal Listing 1.04; (4) the ALJ erred in failing to properly weight the opinion of the treating physician; and (5) the ALJ erred in evaluating his credibility.  The court finds that Mr. Wise's first two challenges require remand.

I.    *Fine Manipulation*

Mr. Wise argues that the residual functional capacity formulated by the ALJ failed to accommodate his "documented fine manipulation problems," and that the ALJ did not articulate why he did not include those problems in his residual functional capacity.   Dr. Ablog examined Mr. Wise on October 3, 2000 and reported:  "There is a problem picking up coins, buttoning shirts, writing with a pencil, and dialing the phone."  R. 131.  The Commissioner argues that the limitations stated by Dr. Ablog were "clearly based on Plaintiff's report to the doctor, who saw Plaintiff on one occasion, and Plaintiff points to no other record evidence to support his alleged limitations in manipulation."  Def. Br. at 10-11.

It is not at all clear that Dr. Ablog's statement that Mr. Wise had a problem picking up coins, buttoning shirts, writing with a pencil, and dialing the phone was based solely on Mr. Wise's subjective statements to the doctor, as the Commissioner contends. In his report, Dr. Ablog differentiated between his own observations and Mr. Wise's reports of symptoms. For example, Dr. Ablog stated in the same paragraph of his report: "He states that he has swelling at the PIP. He states that he can walk 1 block." R. 131. In the next paragraph of his report Dr. Ablog reported: "He states that he drops things like utensils." R. 131. Dr. Ablog's language does not suggest that his statement regarding Mr. Wise's problems with fine manipulation was based solely on Mr. Wise's subjective claims. In an earlier review of Mr. Wise's claim, in addition, Social Security officials acknowledged that he "should avoid repetitive fine motor movements," R. 34, implying that the limitations were genuine and serious. Also, the court could not accept the Commissioner's suggested explanation for the ALJ's silence without simply speculating about why the ALJ failed to address this evidence.

The ALJ has a duty to acknowledge potentially dispositive evidence. *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003). An ALJ is required to account for all medical evidence that is credible and supported by clinical findings. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). Although the ALJ need not provide a written evaluation of every piece of evidence that is presented, *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988), if the ALJ "were to ignore an entire line of evidence, that would fall below the minimal level of articulation

required." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993); see also *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) ("[A] minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position.").

Mr. Wise's difficulties with fine manipulation constitute a line of potentially dispositive evidence in the record. Some of the evidence is subjective. Mr. Wise testified at the hearing on his problems with fine manipulation. In response to the ALJ's questions at the hearing, Mr. Wise testified that he had problems with buttoning his shirt or picking up coins from a table when his fingers were swollen or stiff due to his arthritis. In response to questioning by his attorney, Mr. Wise testified that he was sometimes not able to write his name due to frequent spasms. He also testified that the problem with his cervical discs was "pinching a nerve." R. 310. Although the court has found no clinical findings directly addressing Mr. Wise's alleged spasms, objective evidence in the record supports Mr. Wise's subjective allegations of problems with fine manipulation. The Social Security Administration, in its reconsideration of Mr. Wise's claim on June 8, 2001, stated that Mr. Wise "should avoid repetitive fine motor movements." Also, Dr. Ablog reported, based on his examination, that Mr. Wise had problems with fine manipulation.

The ALJ has not met his duty of articulation with respect to Mr. Wise's problems with fine manipulation, which could obviously be critical to his ability

to perform the limited range of unskilled sedentary work with a sit/stand option, which was the basis for the ALJ's denial of benefits.  In the ALJ's decision, he quoted the sentence from Dr. Ablog's report that Mr. Wise had problems picking up coins, buttoning shirts, writing with a pencil, and dialing the phone.  R. 16. Other than that single quotation, however, the ALJ did not indicate in his decision that he considered the issue of fine manipulation.

When the decision of an ALJ is "unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless." *Sarchet*, 78 F.3d at 308-09.  When the ALJ asked vocational expert Ray Burger to give examples of the sedentary jobs available in Indiana for a hypothetical individual with Mr. Wise's residual functional capacity, Mr. Burger cited 3,226 unskilled cashier jobs, 3,441 unskilled general office clerk jobs, and 2,035 bench assembly worker jobs.  R. 326.  Many of those jobs are likely to require repetitive fine motor movements.  The court cannot say that any reasonable trier of fact would have denied benefits in this case.  The court must remand the case to the ALJ for further proceedings.

II.    *Hypothetical Question to Vocational Expert*

Mr. Wise argues that the hypothetical question posed to the vocational expert at the hearing deviates materially from the residual functional capacity articulated by the ALJ in his decision.  In his decision, the ALJ stated that Mr. Wise was capable of sedentary work with an option to alternate into the sitting or standing position for two minutes "*every half hour.*"  R. 18, 20.  The ALJ's hypothetical question to the vocational expert, Mr. Burger, included a sit/stand option for two minutes "*every hour*" to relieve pain and discomfort.  The ALJ asked Mr. Burger, in relevant part:

> I'll ask you then to assume an individual of the Claimant's education, age and work experience who can do work at the sedentary level, but has the following limitations:  he requires a sit/stand option for approximately two minutes every hour to alleviate pain and discomfort. . . .

R. 326.  Based on the ALJ's hypothetical question, Mr. Burger testified that in the State of Indiana there were 3,226 sedentary unskilled cashier jobs, 3,441 sedentary unskilled general office clerk jobs, and 2,035 sedentary bench assembly worker jobs.  R. 326.

The ALJ asked his hypothetical question following the testimony of medical expert Dr. Hutson on the sit/stand option:

> ALJ:        . . . Based on your review of the records, do you have an
>             opinion as to Claimant's residual functional capacity?
> Hutson:     I do.

| ALJ: | What do you think it is? |
|------|--------------------------|
| Hutson: | I believe that this man could do sedentary work, Your Honor, but I believe that he would have to have a sit/stand option, without leaving the workstation. . . . |
| ALJ: | Well, sit/stand for how long, approximately, to relieve pain, I presume and discomfort, the sit/stand? |
| Hutson: | Yeah, he would sit and then maybe stand up for a few minutes without leaving the workstation and be able to sit back down, Your Honor. |
| ALJ: | Can you give me an idea how many minutes an hour? |
| Hutson: | *I would say every half hour or so, half hour to 45 minutes.* |
| ALJ: | Well, to stand up for how long? |
| Hutson: | A couple minutes. |

R. 321-22 (emphasis added).


Mr. Wise argues that the difference between a sit/stand option every hour, which the ALJ posed to Mr. Burger, and a sit/stand option every half hour, which the ALJ wrote in his decision, is material.  According to Mr. Wise, because no questions were posed to the vocational expert regarding the effect of a change in position every half hour on the occupational base, the case must be remanded.


As a general rule, the hypothetical question posed by the ALJ to the vocational expert "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record."  *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994).  The Commissioner acknowledges the discrepancy between the ALJ's decision and his hypothetical question, but argues that remand is unnecessary because Mr. Burger can be presumed to have heard Dr. Hutson's testimony that Mr. Wise would need a sit/stand option every "half

hour to 45 minutes," even though the ALJ changed that requirement to a sit/stand option "every hour" in his hypothetical question.  The Commissioner relies on *Steele v. Barhhart*, 290 F.3d 936 (7th Cir. 2002), and *Waite v. Bowen*, 819 F.2d 1356 (7th Cir. 1987), which represent a series of Seventh Circuit cases holding that an ALJ's hypothetical question to a vocational expert need not incorporate all of the claimant's alleged limitations in circumstances where the vocational expert independently learned of those limitations.  See *Steele v. Barhhart*, 290 F.3d at 942 ("The reason for the rule is to ensure that the vocational expert does not refer to jobs that the applicant cannot work because the expert did not know the full range of the applicant's limitations.  An exception therefore exists for cases in which the vocational expert independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) and presumably accounted for them."); *Herron v. Shalala*, 19 F.3d at 337 ("the question need not take into consideration every detail of the claimant's impairments especially if the record demonstrates that the [vocational expert] reviewed all the evidence prior to the hearing"); *Ragsdale v. Shalala*, 53 F.3d 816, 820 (7th Cir. 1995) ("an incomplete hypothetical question may be cured by a showing that prior to testifying the vocational expert reviewed the claimant's record containing the omitted information"); *Ehrhart v. Secretary of Health & Human Services*, 969 F.2d 534 (7th Cir. 1992) ("When the record supports the conclusion that the vocational expert considered the medical reports and documents, his responses are probative of both residual functional capacity and which jobs a claimant reasonably can perform, even if the hypothetical

question itself does not take into account every aspect of the claimant's impairments."); *Waite v. Bowen*, 819 F.2d 1356 (7th Cir. 1987) ("The [vocational] expert indicated that he had been provided copies of all medical reports, that he could read and understand them, and that he had reviewed and was familiar with the exhibits in this case, and there is nothing to indicate that the expert did not consider all of the information available to him.  Thus, the record supports the conclusion that the expert considered any complaints of pain in his response even if the hypothetical question did not expressly indicate pain.").

The Commissioner's argument is not convincing in this case.  In *Young v. Barnhart*, the Seventh Circuit distinguished the *Steele* line of cases from a situation where the ALJ poses hypothetical questions to the vocational expert that affirmatively restrict the vocational expert to a particular set of limitations.  362 F.3d 995, 1003 (7th Cir. 2004).  The *Young* court found that the nature of the ALJ's questions in that case prohibited the vocational expert from "considering physical, psychological, or cognitive limitations that he may have absorbed either through reviewing the evidence in the record or by listening to the hearing testimony."  *Id.*  *Young* was not a case where the vocational expert could be assumed to have included omitted limitations in his assessment of the number of jobs that the applicant could perform.  *Id.* at 1003.

Like *Young*, and unlike *Steele*, *Ragsdale*, *Ehrhart*, and *Waite*, this court cannot assume that Mr. Burger considered Dr. Hutson's testimony that a

sit/stand option would be required every "half hour to 45 minutes." The residual functional capacity assessment must be specific as to the frequency of a claimant's need to alternate sitting and standing. Social Security Ruling 96-9. The ALJ specified in his hypothetical question that Mr. Burger should consider a hypothetical individual who required a sit/stand option "every hour." It is reasonable to assume that the witness answered the question he was actually asked, rather than the question he should have been asked. The actual question affirmatively restricted Mr. Burger to the limitation of "every hour."

The ALJ wrote in his decision that he based his residual functional capacity finding on the opinion of Dr. Hutson. R. 18, 321-22. There is no indication that Dr. Hutson's opinion was not supported by the medical evidence in the record. The ALJ did not suggest at the hearing or in his decision that he modified or discounted Dr. Hutson's opinion as stated at the hearing. Thus, the court cannot conclude that the hypothetical question posed by the ALJ reflected Mr. Wise's impairments to the extent that the ALJ found them supported by evidence in the record. See *Ehrhart*, 969 F.2d at 540.

The discrepancies between the frequency of the sit/stand option as stated in the ALJ's hypothetical question, in Dr. Hutson's opinion, and in the ALJ's decision amount to between 15 and 30 minutes. This reviewing court cannot say that a 30 minute, or even a 15 minute, change in the frequency of a sit/stand option would result in no material difference in the number and types of jobs

available to a claimant with Mr. Wise's many limitations.  The ALJ did not address these discrepancies, and the court should not attempt to resolve such issues in the first instance.  These discrepancies make the ALJ's decision unreliable, and the court is not satisfied that any reasonable trier of fact would have to deny benefits if the discrepancies were remedied.  See *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).  For this reason, as well, the court remands the case to the Commissioner for further proceedings.

III.    *The ALJ's Step-Three Conclusion*

At step three of the five-part sequential test for disability, a claimant is eligible for benefits if he has an impairment, or combination of impairments, that meets or equals an impairment found in the Listing of Impairments.  20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.926; 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ stated in his decision:  "The medical expert testified that the claimant's impairments do not meet or equal any listing, particularly Listing 1.04.  He testified there was no evidence of nerve root compression."  R. 16.  Mr. Wise claims that the ALJ failed to sufficiently articulate his decision that Mr. Wise's impairments did not equal Listing 1.04.  The court disagrees.

At the administrative hearing, medical expert Dr. Hutson testified that Mr. Wise "does have degenerative disc disease both in the cervical and lumbar areas of his spine.  He does not have evidence of nerve [root] compression either in the

upper or lower extremities, which is necessary for that listing to be met. So that based upon the evidence of record, Your Honor, he does not meet or equal listing 1.04." R. 320-21.

An ALJ must articulate, at some minimum level, his analysis of the evidence to allow the court to trace the path of his reasoning. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). However, Mr. Wise bears the burden of proving medical equivalence at step three. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999), citing *Steward v. Bowen,* 858 F.2d 1295, 1297 n.2 (7th Cir. 1988).

At the administrative hearing, Mr. Wise's attorney made a conclusory statement that Mr. Wise's impairments met or equaled Listing 1.04. Mr. Wise came forward with no specific evidence to support this statement. Although Mr. Wise's attorney questioned Dr. Hutson about the requirements of Listing 1.04, specifically nerve root compression, the attorney did not make specific reference to the record and did not suggest what evidence could show that Mr. Wise met or equaled Listing 1.04. No doctor produced by Mr. Wise addressed the issue of medical equivalence. In the absence of more specific evidence on the issue, the ALJ's treatment of it was sufficient. See *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988) (more detailed treatment not required where no specific evidence supported listing or equivalent); *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) (following reasoning of *Steward*). The ALJ's duty of articulation in Mr. Wise's case was minimal, and he satisfied it.

IV.    *Opinion of Treating Physician*

Mr. Wise argues that the ALJ improperly failed to give significant weight to the residual functional capacity assessment completed in November 2001 by his treating physician, Brian Darrisaw, M.D.  The assessment indicated that Mr. Wise was totally restricted as to any repetitive hand and foot activity; any sitting, standing, walking, and lifting; and any bending, twisting, kneeling, stooping, and crawling.  R. 203-12.  Dr. Darrisaw concluded that Mr. Wise was unable to do any work at all.  R. 210.  Also, in October 2001, Dr. Darrisaw wrote:  "Mr. Tony Wise has severe arthritis involving both knees, cervical and lumbar spine which precludes him from working.  He should be deemed permanently disabled."  R. 298.

The ALJ discounted Dr. Darrisaw's opinion based on three sources of evidence that were inconsistent with or did not support the doctor's opinion: statements from Dr. Shukla's October 24, 2001 evaluation and report; Mr. Wise's own testimony; and the testimony of medical expert Dr. Hutson, who was an orthopedic specialist and who the ALJ believed was better able to evaluate Mr. Wise's orthopedic impairments than Dr. Darrisaw.[6]

---

[6]Mr. Wise argues that the ALJ erred in reasoning that Dr. Darrisaw's opinion could be discounted because the doctor was a specialist in internal medicine rather than in orthopedic medicine.  When weighing the opinions of physicians, an ALJ may consider the nature of their specialties.  See 20 C.F.R. § 404.1527(d)(5).

Dr. Darrisaw's opinion focused on Mr. Wise's residual functional capacity and ability to work.  These are issues that the law reserves for the Commissioner.  Social Security Ruling 96-5p.  Although the ALJ must consider the opinion, a treating physician's opinion on such issues is not entitled to controlling weight or special significance.  20 C.F.R. § 404.1527(e); SSR 96-5p.  The record indicates that the ALJ properly considered and weighed Dr. Darrisaw's opinion and the ALJ's weighing of that opinion is supported by substantial evidence.[7]


V.    *Credibility Determination*

Mr. Wise contends that the ALJ erroneously evaluated his credibility, and that the ALJ's analysis is patently wrong.  At the hearing in July 2002, Mr. Wise testified that he had pain and discomfort in his lower back that was constant day and night, unrelieved by medication.  R. 309.  He claimed that he had to shift

---

[7]Mr. Wise cites *Gudgel v. Barnhart*, 345 F.3d 467 (7th Cir. 2003) for the proposition that a contradictory opinion of a non-examining physician is not, by itself, sufficient reason to reject the opinion of an examining physician.  The ALJ did not rely solely on Dr. Hutson's opinion when discounting Dr. Darrisaw's opinion.  Also, the reasoning of *Gudgel* is not controlling here.  In *Gudgel*, the claimant's physicians had diagnosed him with post-polio syndrome.  The medical expert testified at the hearing that the record was insufficient to support that diagnosis.  Relying on the expert's testimony, the ALJ rejected the diagnosis.  The claimant argued that the ALJ improperly credited the non-examining medical expert's opinion over the medical opinion of his treating physicians, and the Seventh Circuit agreed.  *Id.* at 470.  In *Gudgel*, however, the non-examining physician disagreed with the *diagnosis* by treating physicians, and failed to identify any inconsistency between the diagnosis and the medical record. In Mr. Wise's case, in contrast, neither the ALJ nor Dr. Hudson challenged any diagnosis of Mr. Wise's treating physicians.  Rather, they challenged Dr. Darrisaw's opinion of Mr. Wise's residual functional capacity and ability to work, an opinion that the law reserves for the Commissioner.

position after sitting, standing, or laying in one position longer than a few minutes at a time. *Id*. He testified that he had six surgeries on his knees and could not bend, stoop, or climb. R. 309-10. He also testified that because of his degenerative cervical discs he had shoulder, arm, and hand spasms "pretty much all the time." R. 310, 316. He claimed that the level of his pain was 8 on a scale of 1 (slightest) to 10 (strongest), even with medication. R. 312.

The ALJ found that Mr. Wise's allegations regarding his limitations were not totally credible:

> The claimant alleges that he is restricted in his functioning due to pain. However, he can shower, dress and bathe himself without difficulty. He is able to drive to his doctor appointments and go to the barber shop occasionally. (Ex. B5E-3). A Social Security employee reported during her face-to-face interview that no difficulties were observed. His gait and station were normal. (Ex. B13). The claimant takes medication for his impairment but has reported no side effects. There are no emergency room records to indicate the claimant has had exacerbations of his pain. His treatment has been through his internist and he has not received any ongoing care from a specialist. The record indicates that the claimant stopped working due to a layoff rather than because of his impairments. I find the claimant's testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence. This is by no means to say the claimant does not have pain, fatigue, and other symptoms but the other evidence indicates they are not significantly limiting beyond what I have found in limiting his residual functional capacity as discussed below. In summary, I have credited the claimant's reports of pain and functional limitations to some extent in assessing his residual functional capacity at the least strenuous level of exertion with additional limitations that take into account his complaints. However, I do not find his allegation of pain and other symptoms entirely credible to the point that they would prevent competitive work.

R. 18.

Ordinarily, a reviewing court defers to an ALJ's credibility determination. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). The general rule is that absent legal error, an ALJ's credibility finding will not be disturbed unless "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).

Mr. Wise challenges specific statements in the ALJ's credibility determination. First, Mr. Wise claims that the ALJ erroneously used his lack of visits to the emergency room as a reason to disbelieve the extent of his pain. The Social Security regulations certainly do not require frequent emergency room visits as a prerequisite to obtaining disability benefits, as Mr. Wise argues. But no authority prohibits the ALJ from considering such evidence as one factor indicating severity of pain. Second, Mr. Wise challenges the ALJ's statement that he received treatment "through his internist and he has not received any ongoing care from a specialist." The record shows that Dr. Shukla treated Mr. Wise on May 19, June 21, and July 7, 2000, October 24, 2001, and February 13, 2002. Reasonable minds could differ as to the interpretation of whether Dr. Shukla's treatments constituted "ongoing care," and the court must defer to the Commissioner's interpretation.

Mr. Wise also argues that his subjective claims of symptoms are supported by his MRI results, his course of treatments, and his medications. The ALJ acknowledged in his credibility determination that some levels of pain and functional limitations were consistent with the medical evidence. The weight to be given to this evidence remained within the discretion of the ALJ. *Diaz v. Chater*, 55 F.3d 300, 309 (7th Cir. 1995). The record does not compel a finding that Mr. Wise's symptoms were so severe that they precluded all work.

In sum, the ALJ's credibility determination is supported by substantial evidence and sufficiently complies with the law. The ALJ adequately articulated his finding that Mr. Wise's claims of disabling pain were not fully credible.

*Conclusion*

The decision of the ALJ is reversed and remanded for reconsideration consistent with this entry.  Final judgment shall be entered consistent with this entry.


So ordered.


Date: April 11, 2005

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov